UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| AMY BISHOP ANDERSON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No.: 5:18-cv-00971-MHH-SGC |
| ) | |
| WARDEN WRIGHT, et al., ) | |
| ) | |
| Respondents. ) | |

**MEMORANDUM OPINION**

Pursuant to 28 U.S.C. § 2254, petitioner Amy Bishop Anderson seeks relief from her state court convictions for capital murder and attempted murder under Alabama law. (Doc. 1, p. 2). Ms. Anderson pleaded guilty to those counts. On November 26, 2019, the magistrate judge entered a 54-page report in which she recommended that the Court deny Ms. Anderson's request for relief and dismiss this action with prejudice. (Doc. 19). Ms. Anderson has objected to the report and recommendation. (Doc. 26).[1]

---

[1] Applying the prison mail rule, Ms. Anderson filed her initial objections on December 10, 2019. (Doc. 24, p. 24). Ms. Anderson filed expanded objections on December 30, 2019. (Doc. 26, p. 46). On June 7, 2020, the Court received a document that Ms. Anderson labelled a motion to amend her petition. (Doc. 29, pp. 1, 67). Because the motion responds to the report and recommendation, the Court construes the motion as additional objections to the magistrate judge's report. The arguments asserted in the 67-page document are duplicative of arguments Ms. Anderson has raised in her petition and in her initial objections. The Court will not address the repetitive arguments separately. To the extent that Ms. Anderson's most recent filing may be construed as a motion to amend, the Court denies the motion.

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district judge must "make a *de novo* determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* FED. R. CRIM. P. 59(b)(3) ("The district judge must consider *de novo* any objection to the magistrate judge's recommendation."). A district court's obligation to "'make a de novo *determination* of those portions of the report or specified proposed findings or recommendations to which objection is made,'" requires a district judge to "'give *fresh consideration* to those issues to which specific objection has been made by a party.'" *United States v. Raddatz*, 447 U.S. 667, 673, 675 (1980) (quoting 28 U.S.C. § 636(b)(1) and House Report No. 94-1609, p. 3 (1976)) (emphasis in *Raddatz*). Although § 636(b)(1) "does not require the [district] judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). That is because for dispositive issues, like habeas petitions, "the ultimate adjudicatory determination is reserved to the district judge." *Raddatz*, 447 U.S. at 675.

As an initial matter, Ms. Anderson objects to the magistrate judge's conclusion that the habeas claims in this matter are time-barred and procedurally

2

defaulted. (Doc. 26, pp. 1-18). For purposes of this opinion, the Court will assume that Ms. Anderson's claims are timely and are not procedurally defaulted. The magistrate judge addressed Ms. Anderson's claims on the merits, so the Court will consider Ms. Anderson's objections concerning the merits of her claims. If her claims fail on the merits, then there is no need to examine timeliness or default in this opinion.

Under the Antiterrorism and Effective Death Penalty Act of 1996, also known as AEDPA, a petitioner may obtain federal habeas relief on claims that have been adjudicated on the merits in state court only if the petitioner demonstrates that the state court's adjudication of the claims produced "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)-(2). A habeas petitioner meets this standard by showing that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Many of Ms. Anderson's objections relate to her contention that her attorneys did not adequately explore her defenses. Ms. Anderson asserts that when she opened

fire in a faculty meeting at the University of Alabama at Huntsville, (Doc. 8-23, p. 99; Doc. 8-29, p. 2), she was suffering from steroid psychosis, a condition which rendered her incompetent and unable to form the intent that the State must prove to obtain a guilty verdict on charges of capital and attempted murder.  She argues that she blacked out while she shot her colleagues, leaving three colleagues dead and three wounded.  (Doc. 26, pp. 1, 9).[2]

To obtain habeas relief on competency grounds, a petitioner must demonstrate that "there was a reasonable probability that [s]he would have received a competency hearing *and* been found incompetent, had counsel requested the hearing." *Lawrence v, Sec'y Fla. Dep't of Corr.*, 700 F.3d 464, 479 (11th Cir. 2012).  Here, based on an examination by an expert in clinical psychology, the parties stipulated that when she shot her colleagues, Ms. Anderson was able to understand the nature, quality, and wrongfulness of her actions.  (Doc. 8-22, p. 9).  In these circumstances, an attorney does not have to seek another expert opinion.  *See generally Bertolotti v. Dugger*,

---

[2] "The *Diagnostic and Statistical Manual of Mental Disorders*, fifth edition, categorizes steroid-induced psychosis as a form of substance/medication-induced psychotic disorder. For steroid-induced psychosis to be diagnosed, a number of criteria must be met. First, the patient must have at least delusions or hallucinations after exposure to a medication capable of producing these symptoms. The disturbance cannot be better explained by a non–medication-induced psychotic disorder, and it does not occur exclusively during the course of a delirium. Finally, it must cause clinically significant distress or functional impairment. These requirements make the condition a diagnosis of exclusion and therefore a physician must rule out other potential differential diagnoses of other medications, drug use, intoxication, electrolyte imbalance, infection, hypoglycemia, hyperglycemia, neoplasms, or known psychiatric causes." https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6793974/ (last visited Feb. 2, 2021) (footnote omitted).

883 F.2d 1503, 1514-15 (11th Cir. 1989); *Sidebottom v. Delo*, 46 F.3d 744, 753 (8th Cir. 1995) ("We have never suggested that counsel must continue looking for experts just because the one he has consulted gave an unfavorable opinion.").

At Ms. Anderson's change of plea hearing, the trial judge explored the topic of Ms. Anderson's competency and received from Ms. Anderson's three attorneys unequivocal affirmations that Ms. Anderson was competent. (Doc. 8-25, pp. 22-23). At her capital murder trial, to establish intent, the State of Alabama presented evidence of the steps that Ms. Anderson took to prepare for the February 12, 2010 shooting. That evidence included evidence that Ms. Anderson visited a firing range one week before the shooting. (Doc. 8-23, p. 103). The State also offered evidence of the steps that Ms. Anderson took to hide the gun and other evidence of her crime after the shooting. (Doc. 8-23, p. 100).[3] On this record, Ms. Anderson cannot establish that her conviction "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§

---

[3] As the magistrate judge discussed in her report, under Alabama law, after a defendant pleads guilty to capital murder, by statute, the State still must prove the defendant's guilt beyond a reasonable doubt to a jury. (Doc. 19, p. 8) (citing ALA. CODE § 13A-5-42); *see ex parte Booker*, 992 So. 2d 686, 687 (Ala. 2008). Though later amended, before 2013, § 13A-5-42 provided:

> A defendant who is indicted for a capital offense may plead guilty to it, but the state must in any event prove the defendant's guilt of the capital offense beyond a reasonable doubt to a jury. The guilty plea may be considered in determining whether the state has met that burden of proof. The guilty plea shall have the effect of waiving all non-jurisdictional defects in the proceeding resulting in the conviction except the sufficiency of the evidence. . . .

ALA. CODE § 13A-5-42

5

2254(d)(1)-(2).

Citing *United States v. Cronic*, 466 U.S. 648 (1984), Ms. Anderson argues that the Court should presume that her attorneys were ineffective and not require her to make a showing of prejudice because her attorney was denied funds for an "appropriate steroid expert" and failed to appeal the order denying the fund request, her attorney agreed to incorrect jury instructions, and her attorney was involved in making "negative/untrue publicity . . . available for use by [the] prosecution." (Doc. 26, p. 22). In *Cronic*, the Supreme Court held that "[t]he right to the effective assistance of counsel is [] the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." 466 U.S. at 656. Because the right to effective counsel is a component of a criminal defendant's broader right to a fair trial, to receive relief on an ineffective assistance of counsel claim, a defendant typically must show that her attorney's conduct prejudiced her at trial. 466 U.S. at 659, n. 26 ("[T]here is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."). But that is not so in "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U.S. at 658. In those circumstances, "ineffectiveness [is] properly presumed without inquiry into actual performance at trial." 466 U.S. at 661 (citing *Powell v. Alabama*, 287 U.S. 45 (1932)).

Ms. Anderson is not entitled to a presumption of prejudice because she pleaded guilty to capital murder and attempted murder before her trial began. Again, her capital murder trial is a function of Alabama statutory law. Ms. Anderson's guilty plea before trial diminished any claim she might have concerning her attorney's conduct during trial.

And even if she had not pleaded guilty before trial, the record does not suggest that Ms. Anderson's trial attorney's conduct was so deficient that she should be relieved of the burden of demonstrating prejudice. Ms. Anderson's belief that the outcome of the trial would have changed had counsel been able to fund a steroid psychosis expert is, on the record before the Court, speculation because, as noted, the State of Alabama presented circumstantial evidence of Ms. Anderson's intent. Ms. Anderson's criticism of her attorney's failure to object to the jury instructions based on her belief the instructions did not require specific intent be proved cannot withstand scrutiny on the record in this case. (Doc. 26, pp. 24-25). The trial court charged the jury in relevant part:

> Before you return a Guilty verdict of the offense charged in this indictment, each and every element of the specific offense charged must be established beyond a reasonable doubt.
>
> . . .
>
> I'm going to give you at this time the specific charge as it relates to the offense of capital murder. The Defendant, Amy Bishop Anderson, is charged with one count of capital murder, and the law states that the intentional murder of two or more persons is capital murder. **A person**

7

> **commits an intentional murder of two or more persons if pursuant to one scheme or course of conduct, he or she causes the death of two or more people and in performing the act or acts that caused the death of those people, he or she intends to kill each of those people.**
>
> To convict, the State must prove beyond a reasonable doubt each of the following elements of intentional murder of two or more persons: One, that Gopi Podila is dead; two, that the Defendant, Amy Bishop Anderson, caused the death of Gopi Podila by shooting him with a firearm; three, **that in committing the acts that caused the death of Gopi Podila, the Defendant intended to kill the deceased person or another person;** four, that Adriel Johnson is dead; five that the Defendant caused the death of Adriel Johnson by shooting him with a firearm; six, **that in committing the acts that caused the death of Adriel Johnson, the Defendant intended to kill the deceased person or another person;** and seven that the murder of Gopi Podila and the murder of Adriel Johnson were pursuant to one scheme or course of conduct. The State has also presented evidence as to a third victim – that being Dr. Davis – but the State is only required to convince you beyond a reasonable doubt that two – or at least two – people were killed pursuant to one course or scheme of conduct.
>
> **A person acts intentionally when it is his purpose to cause the death of another person. The intent to kill must be real and specific.** If you find from the evidence that the State has proven beyond a reasonable doubt each of the elements of intentional murder of two or more persons, as charged, then you shall find the Defendant guilty of capital murder ….

(Doc. 8-24, pp. 40-43) (emphasis added). The charge tracks the Alabama Pattern Jury Instruction, "Murder of Two or More Persons" almost verbatim. *See* ALA. PATTERN JURY INSTR. CRIM. 5-121 (3d ed. 1994). Ms. Anderson's argument that the

jury instructions were incorrect or lacked an instruction on specific intent is without merit.[4]

Nothing in Ms. Anderson's objections points to a state court ruling that resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. §§ 2254(d)(1)-(2). Ms. Anderson has not demonstrated that her attorneys' "performance was deficient" or that "the deficient performance prejudiced the defense" because the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). As noted, Ms. Anderson has not demonstrated that the verdict in her case would have changed had her attorneys pursued a steroid psychosis defense.[5] Therefore, Ms. Anderson is not entitled to habeas relief based on the errors that she has described relating to her capital murder trial.

---

[4] The Eleventh Circuit Court of Appeals has expressed doubt that the cumulative error doctrine may be used to establish an ineffective assistance claim in a habeas proceeding. *See Wood v. Sec'y, Dept. of Corrs.,* 793 Fed. Appx. 813, 818 (11th Cir. 2019). The Court need not explore the issue because Ms. Anderson has not identified a colorable error by her trial attorney. Therefore, Ms. Anderson is not entitled to relief on her "synergy" of error theory. (Doc. 26, p. 22).

[5] The Court has not located an Alabama or an Eleventh Circuit decision in which a court has recognized steroid psychosis as a viable defense to capital murder. Nationally, there seem to be three cases concerning steroid psychosis in a criminal context. In *U.S. v. Palumbo*, 735 F.2d 1095 (8th Cir. 1984), the Eighth Circuit found that a district court properly rejected a steroid psychosis

9

Ms. Anderson's contention that her counsel erroneously failed to file a motion to withdraw her guilty plea likewise fails to meet the standard for habeas relief. (Doc. 26, p. 31). To demonstrate counsel's ineffectiveness for either counseling her to accept the plea bargain offered or for failing to file a motion to withdraw the guilty plea, Ms. Anderson must establish that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) (citing *Roe v. Flores–Ortega*, 528 U.S. 470, 480, 486 (2000)); *see also North Carolina v. Alford,* 400 U.S. 25, 31 (1970) (holding that a plea to remove the possibility of the death penalty represents "a free and rational choice"); *Diveroli v. U.S.*, 803 F.3d 1258, 1263 (11th Cir. 2015). Here, in exchange for her pleas of guilty to capital murder and attempted murder, the possibility of the death penalty was eliminated. Ms. Anderson has not established that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at

---

defense to drug trafficking. 735 F.2d at 1098-99. In *U.S. v Warren*, 447 F.2d 278 (2d Cir. 1971), the jury rejected the defendant's expert testimony regarding steroid psychosis in an art theft case. 447 F.2d at 282. And in *United States v. Jones*, No. 98-251, 2001 WL 37125201 (D.N.M. Apr. 19, 2001), the district court considered a defendant's competency during trial, finding "high levels of Prednisone taken over a long period of time may cause steroid psychosis and a compromise in one's mental functioning. . . . Both doctors also stated that elevated blood sugar levels may be caused by high levels of Prednisone and that in turn, the increase in blood sugar levels, especially at the amounts in the medical records and in the testimony, may also impair mental functioning." 2001 WL 37125201 at *4. The *Warren* decision demonstrates that even if a defendant presents a steroid psychosis defense through expert testimony, a jury may reject that defense. There is nothing in the record in this case that suggests that testimony from an expert that Ms. Anderson experienced an episode of steroid psychosis when she shot her colleagues would have caused the jury to return a different verdict, given the evidence of intent in the record.

372.

Ms. Anderson's argument that her attorneys' failure to secure a trial more quickly coerced her into accepting a guilty plea likewise is not persuasive. (Doc. 26, pp. 23, 35-37). Ms. Anderson may not use her post-conviction assertion of coercion, which contradicts her testimony during her plea colloquy, to establish the prejudice prong of *Strickland. See U.S v. Baxley*, 402 Fed. Appx. 461, 462 (11th Cir. 2010) (courts "strongly presume that the defendant's statements at the guilty-plea colloquy were truthful"); *Knight v. Sec'y, Fla. Dep't of Corrs.*, No. 17-12284, 2017 WL 5593485, *5 (11th Cir. 2017) (quoting *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) ("when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false.")). The record supports a finding that Ms. Anderson "understood the charges against [her] and the consequences of pleading guilty, and voluntarily entered the plea, such that [her] plea should be upheld on federal review." (Doc. 8-25); *Merilien v. Warden*, No. 17-13117, 2019 WL 3079386, *2 (11th Cir. May 3, 2019) (citing *Stano v. Dugger*, 921 F.2d 1125, 1141 (11th Cir. 1991)); *see also Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (per curiam) (a knowing and voluntary guilty plea waives all constitutional challenges to a conviction, including claims of ineffective assistance

of counsel).[6]

Ms. Anderson's assertion that the trial court did not inform her during her change of plea hearing that "intent" was an element of the charges against her overlooks the fact that when the trial judge gave Ms. Anderson the opportunity to have the court explain "anything about any" of the charges against her, Ms. Anderson declined and stated that she understood each of the charges against her. (*Compare* Doc. 26, pp. 33-34, *with* Doc. 8-25, p. 20). When describing the facts that the State of Alabama believed it could prove, counsel for the State indicated that the State believed that it could establish that Ms. Anderson shot her colleagues intentionally. (Doc. 8-25, p. 26). "Because Anderson's plea colloquy was both "intelligent and voluntary," her attorneys could not be ineffective for failing to move to withdraw her guilty plea. *See Alford*, 400 U.S. at 37-39; *Orange v. United States*, No. 16-12842, 2017 WL 5714719, *3 (11th Cir. 2017) (claim that plea was unknowing and involuntary because petitioner did not understand how long his sentence might be was undermined by the record); *Sierra v. Fla. Dep't of Corr.*, 657 Fed. Appx. 849, 852 (11th Cir. 2016) ("With a video recording of the crime and no valid defenses, it would not have been rational for Sierra to have rejected the plea agreement and proceed to trial.").

---

[6] In her initial habeas petition, Ms. Anderson asserted that she signed the plea agreement for several reasons, one of which was to protect her husband. (Doc. 1-1, p. 13).

For these reasons, Ms. Anderson's challenge to her guilty plea does not provide a basis for habeas relief.

Accordingly, the Court overrules Ms. Anderson's objections to the magistrate judge's report. The Court adopts the report and accepts the magistrate judge's recommendation. Ms. Anderson's request for habeas relief is without merit. By separate order, the Court will dismiss this habeas action. Because the petition does not present issues that are debatable among reasonable jurists, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); Rule 11(a)*, Rules Governing § 2254 Proceedings*. Ms. Anderson must request a certificate from the Eleventh Circuit if she wishes to appeal.

**DONE** and **ORDERED** this February 5, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE